UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RICKY J. PICOU, SR. | CIVIL ACTION |
| VERSUS | NO: 09-2810 |
| D&L TOWING, INC. and PREMIER SERVICES, INC. | SECTION: R(4) |

**ORDER AND REASONS**

Before the Court is defendant Premier Services, Inc.'s motion for summary judgment.[1] For the following reasons, the Court GRANTS in part and DENIES in part Premier Services' motion.

## I. BACKGROUND

This case arises out of an accident that occurred aboard a sinking barge. Plaintiff alleges that the events leading to his injury were as follows.[2] Ricky J. Picou, Sr. was a seaman assigned to the vessel M/V Lorina. Defendant D&L Towing, Inc.

---

[1] (R. Doc. 44.)

[2] (R. Docs. 1, 28, and 53.)

employed Picou and owned the M/V Lorina. On or about April 3, 2008, the M/V Lorina towed a barge, the Suard 76, to a docking facility. Defendant Premier Services owned the Suard 76. After the Suard 76 was docked, it began to list and was in danger of sinking. Picou and his deckhand attempted to remove the hatch covers on the Suard 76 to perform an inspection. Picou states that he found that one of the covers was missing a screw, was rusted, and was difficult to open. While attempting to open the cover, Picou fell on his back and suffered injuries.

On February 18, 2009, Picou sued D&L Towing and Premier Services under the Jones Act[3] and the general maritime laws.[4] Picou alleges that the failure of D&L Towing to provide him with a safe place to work, the unseaworthiness of the M/V Lorina, and the unsafe and unseaworthy condition of the Suard 76 caused the accident. On October 12, 2009, D&L Towing filed a crossclaim against Premier Services demanding indemnity and contribution.[5] Premier Services then filed a third party complaint against P&L Towing, Inc. on December 11, 2009.[6] Premier Services alleges

---

[3] 46 U.S.C. § 30104.

[4] (R. Doc. 1.)

[5] (R. Doc. 14.)

[6] (R. Doc. 21.)

that it leased the Suard 76 to P&L Towing on or about May 16, 2007. It further asserts that P&L Towing was responsible for ordinary maintenance on the barge and that any injuries suffered by the plaintiff were due to the negligence of P&L Towing. On December 28, Picou filed a supplemental and amending complaint naming P&L Towing, Inc. as a defendant.[7] Premier Services now moves for summary judgment as to the claims of Picou and D&L Towing.

## II. STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[8] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[9] All reasonable inferences are drawn in favor of the

---

[7] (R. Doc. 28.)

[8] Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[9] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

nonmoving party, but “unsupported allegations or affidavits setting forth ‘ultimate or conclusory facts and conclusions of law’ are insufficient to either support or defeat a motion for summary judgment.”[10]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party “must come forward with evidence which would ‘entitle it to a directed verdict if the evidence went uncontroverted at trial.’”[11] The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or “showing that the moving party’s evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party.”[12]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

---

[10] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[11] *Int’l Shortstop, Inc. v. Rally’s, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[12] *Id.* at 1265.

of the nonmoving party's claim.[13] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[14] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[15]

## III. DISCUSSION

Premier Services contends that the claims of Picou and D&L Towing fail as a matter of law because Picou was never a seaman or crew member with respect to the Suard 76 as required for an unseaworthiness claim. Premier Services also contends that it did not owe a duty of seaworthiness to Picou because it did not have operational control over the Suard 76.

### A. Unseaworthiness

A shipowner's duty to provide a seaworthy vessel is absolute and nondelegable.[16] The duty of seaworthiness requires a

---

[13] *See Celotex*, 477 U.S. at 325.

[14] *See id.* at 324.

[15] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

[16] *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991).

shipowner to furnish a vessel, and its appurtenances, that are reasonably fit for their intended uses.[17] It is not in dispute that a barge, such as the Suard 76, that is pulled by a tug is a separate vessel from the tug.[18]

Historically, a shipowner's duty of seaworthiness under general maritime law extended only to seamen in the ship's employ.[19] To be a seaman with respect to a vessel, a person’s connection to the vessel must be “substantial in terms of both its duration and its nature.”[20] In *Sea Shipping Co. v. Sieracki*,[21] the United States Supreme Court extended the cause of action for unseaworthiness to longshoremen employed by an independent contractor but doing the work of a seaman aboard ship.[22] But in 1972, Congress amended the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) to add 33 U.S.C. §

---

[17] *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).

[18] (R. Doc. 53.); *see Smith v. Harbor Towing & Fleeting, Inc.*, 910 F.2d 312, 313 (5th Cir. 1990).

[19] *Miles v. Apex Marine Corporation, et al.*, 498 U.S. 19, 27 (1990).

[20] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995); *see also Becker v. Tidewater, Inc.*, 335 F.3d 376, 388 (5th Cir. 2003) (relationship must be more than transitory).

[21] 328 U.S. 85 (1946).

[22] *Miles*, 498 U.S. at 27, citing *Sieracki*, 328 U.S. at 99.

905(b), which effectively abolished the *Sieracki* unseaworthiness cause of action.[23] While the *Sieracki* cause of action is still available in some cases that do not fall under the LHWCA,[24] it is not available for a crew member of one vessel who is aboard but not a crew member of another vessel.[25]

A seaman permanently assigned to one vessel cannot pursue an unseaworthiness claim for injuries sustained aboard a second vessel with which the seaman only had a transitory relationship.[26] In *Smith v. Harbor Towing*,[27] a crew member of a tug preparing to push two fuel barges was injured after boarding one of the barges. The Fifth Circuit affirmed the district court's finding that the barge owner did not owe the plaintiff a

---

23 *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 262 (1979).

24 *See Cormier v. Oceanic Contractors, Inc.*, 696 F.2d 1112, 1113 (5th Cir. 1983) (plaintiff aboard barge in Dubai, United Arab Emirates, was beyond reach of the LHWCA and could bring a *Sieracki* cause of action); *Aparicio v. Swan Lake*, 643 F.2d 1109, 1114 (5th Cir. Unit A Apr. 1981) (federally-employed seaman not covered by the LHWCA had a *Sieracki* claim).

25 *Reddick v. Daybrook Fisheries, Inc.*, 1997 WL 218252 at *2 (E.D. La. 1997), citing *Smith v. Harbor Towing*, 910 F.2d 312, 314 (5th Cir. 1990).

26 *Smith*, 910 F.2d at 314; *Coakley v. SeaRiver Maritime, Inc.*, 319 F.Supp.2d 712, 714 (E.D. La. 2004); *Reddick*, 1997 WL 218252 at *2.

27 910 F.2d 312.

duty of seaworthiness because he was not a crew member of the barge.[28]

Here, it is undisputed that Picou was a seaman with respect to the M/V Lorina but not with respect to the unmanned Suard 76.[29] Picou concedes that he cannot maintain an unseaworthiness claim against Premier Services as the owner of the Suard 76 because he was not a crew member of that vessel.[30] The Court so rules and dismisses Picou's unseaworthiness claim against Premier Services.

**B. Negligence**

Picou argues that even though he has no cause of action for unseaworthiness, he can still maintain a claim against Premier Services for negligence under the general maritime laws. In addition to claiming that the Suard 76 was unseaworthy, the plaintiff also asserts in his complaint that the vessel was "unsafe" due to "the negligence, carelessness, and want of due care" of Premier Services.[31]

---

28 *Id.* at 313.

29 (R. Doc. 53.)

30 *Id.*

31 (R. Doc. 1, ¶12.)

Negligence is actionable under the general maritime laws.[32] A maritime negligence cause of action has essentially the same elements as common law negligence.[33] A shipowner's "duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew" is a "settled principle" of maritime law.[34]

Picou was not a crew member of the Suard 76, but he was owed a duty of reasonable care because he was lawfully aboard the vessel. Although he cannot maintain a cause of action for unseaworthiness, he can still maintain a negligence action.[35] In *Smith v. Harbor Towing*,[36] described *supra*, a crew member of a tug could not claim unseaworthiness when he suffered an injury aboard the unmanned barge being towed. The Fifth Circuit nonetheless

---

[32] *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005).

[33] *Id.* at 842; *see also Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000).

[34] *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959); *see also Strong v. B.P. Exploration & Production, Inc.*, 440 F.3d 665, 669 (5th Cir. 2006) (negligently creating unsafe working conditions aboard a vessel is a maritime tort).

[35] *See United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki*, 358 U.S. 613, 618-19. (U.S. 1959) (unseaworthiness claim was rejected, but state law negligence claim was valid).

[36] 910 F.2d 312.

observed that the plaintiff could bring a negligence claim in maritime tort against the barge owner.[37] Likewise, Picou's cause of action for maritime negligence is not invalid as a matter of law.

Premier Services also argues that it is not liable for the condition of the Suard 76 at the time of the accident because it did not have operational control of the vessel. Premier Services asserts that an agreement[38] between itself and defendant P&L Towing transferred operational control of the barge to P&L Towing. Premier Services further argues that this agreement constituted a demise charter and shifted any liability for maintaining the vessel to P&L Towing. Finally, Premier Services contends that although as shipowner it could still be liable for pre-agreement defects in the condition of the vessel, it delivered the vessel to P&L Towing in good condition.

A demise or "bareboat" charter exists when "full possession and control of the vessel is transferred to the charterer."[39] Because a shipowner who has demised a vessel no longer controls it, such an owner is not liable for unseaworthiness or negligence

---

[37] *Id.* at 314-15.

[38] (R. Doc. 44, Ex. A.)

[39] *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993).

that comes into existence while the charter is in effect.[40]

To demise a vessel, a shipowner must "completely and exclusively" grant "possession, command, and navigation" of the vessel to the charterer.[41] A demise charter is "tantamount to, though just short of, an outright transfer of ownership."[42] By contrast, under a time charter, the owner retains ultimate control and possession of the vessel and remains responsible for maintaining it.[43] Time charters are also generally limited to a definite period of time.[44] The party seeking to establish the existence a demise charter bears a heavy burden of proof.[45]

Premier Services has not established as a matter of law that it demised the Suard 76 to P&L Towing prior to the accident. The agreement,[46] entitled "Equipment Rental Form & On Charter

---

[40] *C. Itoh & Co. (America), Inc. v. M/V Hans Leonhardt*, 719 F.Supp. 479, 500 (E.D. La. 1989), citing *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973).

[41] *Guzman v. Pichirilo*, 369 U.S. 698 (1962).

[42] *Id.* at 700.

[43] *Walker*, 995 F.2d at 81.

[44] *Id.*

[45] *Martin v. Walk, Haydel & Associates, Inc.* 742 F.2d 246, 248 (5th Cir. 1984); *Saudi v. S/T Marine Atlantic*, 159 F.Supp.2d 492, 497 (S.D. Tex. 2000).

[46] (R. Doc. 44, Ex. A.)

Agreement," does not explicitly state that it constitutes a demise charter.[47] Nor does it state that Premier Services is even a party to it. The agreement bears the heading "Suard Barge Services, Inc." and does not mention Premier Services.[48] The agreement also gives no indication of the degree of control Premier Services granted to P&L Towing. It fails to indicate which party was responsible for maintenance and repairs. Moreover, the agreement itself covers an estimated period of 30 days, although another document indicates that the barge was returned by P&L Towing after 440 days. The limited nature of the agreement is more consistent with a time charter than with a demise charter. These features of the agreement create issues of fact as to whether the agreement was a demise charter.

Premier Services highlights Louis Suard's statement in his affidavit that Premier Services had "no operational control over the Suard 76."[49] In light of the nature of the written

---

[47] *Cf. Federal Barge Lines, Inc. v. SCNO Barge Lines, Inc.*, 711 F.2d 110 (8th Cir. 1983) (finding a demise charter where the parties specifically agreed to a "full demise" under which the charterer was "responsible for the navigation and operation of the vessel and direction of the crew and all other matters" except as otherwise stated).

[48] Louis Suard does state in his affidavit that this form is a regular business document of Premier Services. (R. Doc. 44, Ex. A.)

[49] *Id.*

agreement, this conclusory assertion is insufficient to meet Premier Services' burden on summary judgment of establishing a demise charter as a matter of law.

Moreover, a shipowner who has demised a vessel remains liable for negligence that predates the charter.[50] In a maritime negligence cause of action, a defendant's failure to warn of a defect may violate the duty of ordinary care if the harm is reasonably foreseeable.[51] Here, Picou and his deckhand state in their depositions that there was a substantial amount of rust built up on the hatch cover of the Suard 76, making it difficult to open.[52] The existence of rust supports an inference of a condition that had been developing over time. Premier Services points out that the charter states that the Suard 76 was in "good condition" and that the manhole covers were in "good shape" when it was rented on May 16, 2007.[53] This statement is undermined by

---

[50] *Baker v. Raymond Intern., Inc.*, 656 F.2d 173, 183 (5th Cir. 1981); *C. Itoh & Co. (America), Inc. v. M/V Hans Leonhardt*, 719 F.Supp. 479, 500 (E.D. La. 1989)

[51] *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). *See also Smith v. Mitlof*, 198 F.Supp.2d 492, 503 (S.D.N.Y. 2002) (original shipowner could be liable for negligent failure to warn of defects despite selling the vessel prior to the alleged injury).

[52] (R. Doc. 53, Ex. 1 and 3.)

[53] (R. Doc. 44, Ex. A.)

the fact that a surveyor of unknown affiliation said the same thing in July of 2008 when the barge was returned.[54] This was three months after the rusty condition of the hatch cover was reported by two witnesses. The two statements raise a reasonable inference that the rusty condition was present in May 2007, but simply not mentioned. The Court finds that there are issues of fact as to the condition of the barge when P&L Towing took possession of it.

## IV. CONCLUSION

For the reasons stated, Premier Services, Inc.'s motion for summary judgment is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 2nd day of July, 2010.

Sarah Vance

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[54] *Id.*